# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHACANA TAYLOR, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Case No. 05 C 3717 |
| ) | |
| ELTON M. SYKES, ) | |
| ) | |
| Appellee. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Chacana Taylor appeals from a bankruptcy judge's May 4, 2005 decision that certain debts owed by Elton M. Sykes are dischargeable under 11 U.S.C. § 523(a)(2)(A) and that Taylor is not entitled to recover attorney's fees. For the reasons stated below, the Court affirms the bankruptcy judge's decision in part and reverses and remands in part.

## Factual Background

In 1998, Taylor bought a two-bedroom, single family home in Chicago, Illinois. In 2002, Taylor lost her job and could no longer afford to make her monthly mortgage payments. After unsuccessfully attempting to obtain refinancing and faced with the realistic prospect of foreclosure, she elected to sell the home to Sykes, an acquaintance she knew through her former fiancé, Zeb Everett. Skyes wanted to make a real estate investment, and Taylor thought that by selling to him she could remain in her home. Sykes would buy the home from Taylor, and Taylor would use the equity (approximately $46,000) to pay rent to Sykes while she looked for a job.

The transaction seemed simple enough, but Sykes complicated matters by attempting to swindle Taylor out of her equity. Sykes and his mortgage broker carried out the ruse through

three principal means. First, they falsely told Taylor, who was not represented by counsel during the transaction, that because Taylor's property was in foreclosure, the sale proceeds – which they said only amounted to $10,886 – had to be paid to her through Sykes's friend, Earl Wallace. Sykes never planned for Wallace to transfer this money to Taylor. Instead, he intended Wallace to keep it because he owed Wallace money. Second, Sykes and Brownlee changed the sales price on the closing statement from $126,000, which was the agreed upon contract price, to $115,000. Third, Sykes and Brownlee had Taylor sign off on a junior mortgage note by Sykes in the amount of $17,250, effectively allowing Sykes to keep $17,250 of the sale proceeds on the pretense that he would pay it to Taylor later. Sykes told Taylor that the note was necessary to pay off Taylor's own mortgage, but he never made a single payment on the note, nor did he ever intend to do so.

Soon after the closing, Taylor began contacting Sykes about the $10,886 paid to Wallace. At first, Sykes lied and said that Wallace had not received the proceeds of the check. Then, on December 5, 2002, Sykes paid Taylor $2,000. After that, he completely stopped communicating with her. On January 7, 2003, he served her with a five-day eviction notice for failure to pay rent, leaving her without a home.

On June 12, 2003, Taylor sued Sykes in Cook County Circuit Court for common law fraud, breach of contract, and violations of the Illinois Consumer Fraud and Deceptive Business Act (ICFDBA), 815 ILCS 505/1 *et seq.*, and the City of Chicago's Residential Landlord Tenant Ordinance (RLTO). Chicago, Ill., Code tit. 5 ch. 12. On November 11, 2003, Sykes filed for bankruptcy under Chapter 7 of the Bankruptcy Code. On February 13, 2004, Taylor filed an adversary complaint in the bankruptcy court reasserting the claims she had made in state court. The complaint requested that the court find any damages non-dischargeable under 11 U.S.C. §

523(a)(2)(A) (limiting dischargeability of debts obtained by fraud) and award her attorney's fees. On June 7, 2004, the court, without a written opinion, granted Sykes's motion to strike from Taylor's complaint the paragraphs alleging violations of the ICFDBA and the RLTO. The motion contended, among other things, that the ICFDBA claim had not been pleaded with sufficient particularity.

On May 2, 2005, the bankruptcy court conducted a bench trial in which Taylor and Sykes testified about the transaction in question. On May 4, 2005, the court ruled that the $10,886 paid to Wallace (actually $8,886, after subtracting Sykes's $2,000 payment to Taylor) was a non-dischargeable debt because Taylor justifiably relied on Sykes's assertion that he would return the money. The court also ruled that Sykes changed the sales price (from $126,000 to $115,000) "to allow payment to Wallace instead of Taylor." May 4, 2005 Tr. at 9. That is, the court found that the $11,000 sale price reduction and the $10,866 payment to Wallace were not two separate frauds totaling $21,866, but one single fraud totaling $10,866. Finally, the court ruled that the debt represented by the $17,250 note was dischargeable because Taylor did not justifiably rely on Sykes's assertion that the money would be used to pay off her own mortgage.

## Discussion

On appeal, Taylor argues that the bankruptcy court erred in holding the $17,250 debt non-dischargeable, in finding that the $11,000 sale price reduction was not distinct from the $10,866 payment to Wallace, and in denying her attorney's fees under the promissory note and the ICFDBA.

### 1. Dischargeability of debts

The Court first considers the bankruptcy court's ruling that the $17,250 debt was

3

dischargeable. Section 523(a)(2)(A)'s exception to the discharge of debts states as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
> . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

11 U.S.C. § 523(a)(2)(A). "[T]o prove that a debt is nondischargeable, the creditor bears the burden of proof by a preponderance of the evidence." *In re Bero*, 110 F.3d 462, 465 (7th Cir. 1997). This provision balances the common law prohibition against fraud in commercial and consumer transactions with the Bankruptcy Act's goal of giving debtors a "fresh start." *See Grogan v. Garner*, 498 U.S. 279, 287 (1991).

A debt is non-dischargeable under this section if the creditor proves by a preponderance of the evidence that the debtor obtained the money through a representation that was false or was made with such reckless regard for the truth as to constitute willful misrepresentation; the debtor had an actual intent to defraud; and the creditor justifiably relied on the false representation. *See In re Rembert*, 141 F.3d 277, 280-81 (6th Cir. 1998); *In re Monroe*, 304 B.R. 349, 356 (N.D. Ill. 2004). Taylor first contends that the bankruptcy court erred in ruling that the she did not justifiably rely on Sykes's statement that the $17,250 promissory note was necessary to pay off Taylor's mortgage. The Court reviews the bankruptcy judge's conclusions of law *de novo* and reviews her factual findings for clear error. *In re Sheridan,* 57 F.3d 627, 633 (7th Cir.1995); *In re Bonnett,* 895 F.2d 1155, 1157 (7th Cir. 1990).

For reliance to be justified, it need not be objectively reasonable. *See Field v. Mans*, 516 U.S. 59, 77 (1995). Instead, "'the matter. . . turn[s] upon an individual standard of the plaintiff's

4

own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.'" *Id.* at 72 (quoting W. Prosser, Law of Torts § 108, at 717 (4th ed. 1971)). This principle parallels two common law rules: that contributory negligence is not a defense to an intentional tort claim and that a creditor need only conduct a cursory investigation into a debtor's representations. *See* Restatement (Second) of Torts § 541 cmt. a. The requirement is not particularly demanding of creditors, who need not even conduct a title search to verify that a debtor did not transfer certain property, *Field v. Mans*, 157 F.3d 35, 46 (1st Cir. 1998) (appeal of bankruptcy court's decision on remand from the Supreme Court); *Sanford Inst. for Sav. v. Gallo*, 156 F.3d 71, 76 (1st Cir. 1998), demand increased creditor protections such as an escrow account, *In re Saltzman*, No. 95 B 1522, 1997 WL 539660 (N.D. Ill. Aug. 22, 1997), or make a phone call to verify as authentic a purchase order presented as proof of income. *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 677 (7th Cir. 1995) (pre-*Field* decision).

Nonetheless, a creditor may not close her eyes to red flags that demand inquiry into the truth of a debtor's assertion. The Court in *Field*, quoting the common law standard set out in the Restatement, described the difference between justified and unjustified reliance as follows:

> if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses.

*Field*, 516 U.S. at 71 (quoting Restatement (Second) of Torts § 541 cmt. a); *see also In re Mercer*, 246 F.3d 391, 421-22 (5th Cir. 2001) (noting that a credit card company cannot close its

5

eyes to "red flags" on an applicant's credit report).

In this case, the bankruptcy court effectively concluded that Taylor had purchased the proverbial one-eyed horse. The court said:

> Taylor claims that the second mortgage money was necessary to pay off Taylor's own mortgage. However, even if this were true, Taylor failed to inform herself adequately about who would be getting the benefit of this money and why.
>
> Taylor could easily have ascertained the outstanding amount of her debt to her mortgage company, and should have known that it was around $79,000, and that the $17,250 was a loan to Sykes from the proceeds of the sale. Taylor also acknowledged that she signed the junior note issued by Sykes to her for $17,250 and she should have at least paid enough attention to know generally what it was before she signed it.

May 4, 2005 Tr. at 10. As best the Court can determine, the bankruptcy court held the debt non-dischargeable for two separate reasons: first, because Taylor could have called her mortgage company and asked how much she owed on the house, and, second, because the note, contrary to what Sykes had told Taylor, required payments from Sykes to Taylor, not payments from Taylor to the holder of her mortgage.

The bankruptcy court's first reason runs afoul of *Field's* insistence that justifiable reliance does not require a creditor to conduct her own investigation. *See Field*, 516 U.S. at 69. Inasmuch as a creditor need not conduct a title search to rely justifiably on a debtor's representations, *see Field*, 157 F.3d at 46 (appeal of bankruptcy court's decision on remand from the Supreme Court); Restatement (Second) of Torts § 540 (noting that a buyer is justified in relying on a seller of land who says that the property is free of encumbrances even if he could have walked across the street to register of deeds to check), the law did not require Taylor to contact her mortgage company to verify the amount of equity Sykes said that she had in her home.

6

The bankruptcy court's second reason – that a cursory investigation would have revealed that the note represented a loan to Sykes – poses a more difficult question. Several courts have held, and other authorities have recognized, that a party may not close her eyes to the clear language in a contract and then claim that she justifiably relied on representations contrary to such language. *See, e.g., Hall v. Burger King Corp.*, 915 F. Supp. 1509, 1525 (S.D. Fla. 1995) (reliance unjustifiable as a matter of law where plaintiff failed to read contract); *In re Shaffer*, 206 B.R. 95, 98 (Bankr. M.D. Penn. 1997) (debt dischargeable because creditors could have discovered a debtor's misrepresentation by reading the document they signed); *Maw v. McAlister*, 252 S.C. 280, 285, 166 S.E.2d 203, 205 (1969); *Rubey v. Wood*, 13 Utah 2d 285, 287, 373 P.2d 386, 387 (1962); D. Dobbs, The Law of Torts § 475 (2001) ("courts may conclude in particular cases that as a matter of law the plaintiff's reliance is unjustified when a reading of the document would have revealed the truth. . . .").

Sykes did not say, however, that the document Taylor signed was something other than what it appeared to be on its face. According to the bankruptcy court, Taylor claimed that Sykes said "the second mortgage money was needed to pay off Taylor's own mortgage." May 4, 2005 Tr. at 10. Such a representation would not have been inconsistent with the terms of the note; the representation described who would obtain the benefit of the loan proceeds, not the type of contract Taylor signed. Though it is true that the loan document said nothing about money being paid to the mortgage company, it also said nothing to the contrary.

The Court sees no reason why Taylor could not have justifiably believed that the loan proceeds would be used by Sykes to pay off Taylor's mortgage as he allegedly promised. Even though this part of the transaction was memorialized by a note executed by Sykes payable to

7

Taylor, that is not necessarily inconsistent with Taylor's expressed understanding. Debtors sometimes pay debts by satisfying a liability that the creditor owes to a third party. The Court concludes that the bankruptcy court's finding that Taylor did not justifiably rely on Sykes's alleged representation that the loan money would be used to pay off Taylor's mortgage was clearly erroneous.

Taylor's next argument concerns the $11,000 difference between the agreed upon contract price and the sale price at closing. She argues that the bankruptcy court erred in holding that the reduction was made "to allow payment to Wallace instead of Taylor" rather than as a separate aspect of the fraud. Sykes does not respond to Taylor's argument, and for good reason. After examining the settlement statement and double-checking the arithmetic, it is clear to the Court that the $10,886.90 paid to Wallace was deducted from the $115,000 sale price, not from the $126,000 contract price. *See* Pl. Resp. to Def. Mot. for Summ. Judg., Ex. C. The bankruptcy court's finding that the Wallace payment and the reduction in sale price were one and the same was clearly erroneous.

    **2.**    **Attorney's fees**

Taylor argues that she is entitled to attorney's fees under the terms of the note and under the ICFDBA. With respect to the terms of the note, a debtor in bankruptcy is obligated to pay attorney's fees provided for by contract so long as the debt on the contract is non-dischargeable. *See Mayer*, 51 F.3d at 677 ("Attorney's fees, no less than the principal and interest, are the result of the fraud, and the perpetrator cannot escape the consequences."). Here, the note plainly requires payment of attorney's fees, "If suit is brought to collect this Note, the Note holder will be entitled to collect all reasonable costs and expenses of the suit, including, but not limited to,

reasonable attorney's fees." Pl. Resp. to Def. Motion for Summ. Judg., Ex. A. For this reason, if on remand the bankruptcy court finds the debt evidenced by the note to be non-dischargeable, the court should award Taylor attorney's fees.

Taylor also argues that she is entitled to attorney's fees under the ICFDBA. She concedes, however, that the bankruptcy court struck paragraph five of her complaint, which sought recovery under this statute. She nevertheless maintains that the court left paragraph eight, which incorporated Count 1 of her state court complaint and also pleaded claims under ICFDBA. We reject Taylor's argument that the bankruptcy court struck the ICFDBA from one paragraph but not from another. Sykes's motion to strike objected to the complaint because "the legal claims of the state court action are immaterial and impertinent to an action objecting to the dischargeability of a debt" and because Taylor failed to plead fraud with particularity. Regardless of the merits of these arguments, or which one the bankruptcy court believed meritorious, by striking paragraphs five and seven from the complaint, it is apparent that the court intended to remove the allegations of violation of the ICFDBA. Accordingly, Taylor is not entitled to attorney's fees under the statute, and we affirm the bankruptcy court's ruling on this issue.

## Conclusion

For the reasons stated above, the Court reverses the Bankruptcy Court's determination that the $17,250 note was dischargeable and denying attorney's fees under the terms of the note, as well as the Bankruptcy Court's determination that the $11,000 sale price reduction and the $10,866 payment to Wallace were a single fraud. The Court affirms the Bankruptcy Court's decision to deny attorney's fees under the ICFDBA. The case is remanded to the Bankruptcy

Court for further proceedings consistent with this ruling.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 22, 2005